Good morning, Your Honors. Just a minute, let's make sure everybody's... Okay, go ahead. May it please the Court, Anna Sarah Purcell from Fenwick & West, on behalf of Plaintiff Damian O'Keeffe, who is present today. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. All right. The District Court granted summary judgment to defendant based on one purely legal conclusion, that Section 3001A of the California Penal Code does not create any liberty interest entitled to due process protection. That conclusion is incorrect. And for that reason, plaintiff asks that this Court reverse the judgment below and remand for further proceedings consistent with the recognition that Section 3001 does create a liberty interest in discharge from parole. Well, but are you suggesting that on this record I can't make the second question determination where the due process rights really violated when he didn't receive the initial written notice of the retention decision? On this record, the Court cannot make any factual determinations as to whether or not... Well, it isn't a factual determination. The record is clear. The facts are there. Nobody disputes the facts. He didn't get notice, but he was allowed to appeal because of the fact he didn't get any notice. That's the facts. And he didn't appeal. And he didn't appeal. Yes, Your Honor. The facts do show that after more than ten months, after he had been taken into custody, Mr. O'Keefe did finally receive notice of the retention decision and the opportunity to appeal that decision. And he didn't? And did not. But by that point, his due process rights had already been violated. Due process requires an opportunity to be heard when that opportunity is meaningful. The opportunity to be heard ten months after a person has been taken into custody is not consistent with the due process clause. Well, that's a legal argument, I guess, we can focus on. I'm trying to figure out what factual determination the district court ought to make. If I find for you, if I agree with you, what factual determination, what facts are you going to present, which would be any different than what I have in this record where I can determine why. Nonetheless, California knew he didn't get the notice. Should have got the notice. We'll let him appeal now. We'll let him do whatever he needs to do. And he didn't. That's the bottom line. Well, because by that point, Your Honor, the damage had already been done. Mr. O'Keefe had already been taken into custody in Nevada, extradited to California, and forced to spend the better part of a year in custody. So I don't see how the opportunity to appeal after all that has already occurred can possibly remedy the due process violation. That's a legal argument, however, is it not? That is a legal argument. I don't see any factual determination I need to further consider. So I think the second issue is directly in front of us, if it's a legal matter. Your Honor, I would agree that the issue of whether the process that Mr. O'Keefe eventually received is properly before this Court, whether that comports with the due process clause. But it plainly does not. The opportunity to be heard has to be meaningful in order to comply with due process. And in this case, it was not. Okay. We've plainly got that argument well in front of us. Let's talk about the federally protected liberty interest. Okay. Okay. Does your client have any right to review the board parole decisions? Well, he has the right to be heard on those decisions. He has a right to be heard. Does he get a right to review them? I believe for the opportunity to be heard to be meaningful, he would have to be provided with the basis for that decision so that he could state the grounds for his appeal, merely knowing that he had been retained without having any knowledge of the reasons for that decision would not provide him with a meaningful opportunity. What's the right to input before the board parole decisions? What is his right to input? I didn't see any. Well, Your Honor, the statute does not provide any right to be heard before the board makes an initial retention decision. In fact, your client doesn't even have a right to be present at the hearing, does he? That is correct. But, Your Honor, once this court recognizes a liberty interest, then what process the statute provides is irrelevant, and the question of what processes do is purely one of federal law. Well, we're now trying to determine whether we are going to suggest there's a liberty interest, are we? Yes, Your Honor. So you've jumped the predicate. The predicate is, boy, is there a liberty interest at all? It seems a little uneasy to me when your client doesn't even have a right to review the parole board's decisions, the client doesn't have any right to any input before the decision, your client doesn't have any right to be present before the decision, that he all of a sudden jumps to a liberty interest. Well, Your Honor, under Greenholtz v. Nebraska and Board of Pardons v. Allen, those considerations are not the relevant considerations. The relevant considerations are only two. Does the statute use mandatory language, and does the statute provide criteria that are to guide the discretion of the decision maker? And Section 3001A does both. So the fact that the statute doesn't provide in and of itself significant procedural protections does not defeat the existence of a liberty interest under Greenholtz v. Allen. Now, looking at those tests, the district court should have looked only at two related inquiries. First, does the statute... And I'm trying to really see if I could agree with you. I have Carver v. Lehman in front of me. If I have Carver v. Lehman, it seems to me that case suggests that the expectation of receiving process is not, without more, a liberty interest protected by the due process clause. If I have anything here, it is the right to get the board's record. I have nothing else. They can't go before the board. They can't input into the board. They can't be present in the board. The best they got under this statute is I'm going to get the document. And then I looked directly at Carver, and it says the expectation of receiving due process or receiving process, which is get the record, is not, without more, a liberty interest. Certainly, Carver is correct on that point, and we're not disputing that the expectation of receiving process, without more, is an interest entitled to due process protection. But we're not here because of the right to receive process. We're here because of the right to be discharged from parole after 13 months. And the due process clause... Well, but just a minute. The only reason, if there is anything for you to be here at all, it is that your client didn't get a chance to do something about this because he didn't get the written decision. That is process, the right to get the process. And California said, okay, he didn't get the process. We'll let him have a chance to appeal now. And he can appeal, and he didn't. I'm, again, I'm stuck. I'm hurt. I don't know where to go with this because I don't know why you say there's some liberty interest in getting this document that says what the board did when you can't say anything about what they did or put any input into it. Well, Your Honor, I want to be clear. We're not saying there's a liberty interest in getting this document that is of itself entitled to due process protection. The interest that's entitled to due process protection is the interest in release. And once that interest is recognized, then the due process clause itself requires that plaintiffs be given notice and an opportunity to be heard before he can be deprived of that interest. And we know that Section 3001A creates an interest in release because it uses mandatory language and because it guides the discretion of the decision maker. So if I jump with you on that decision, that I cross the questions I've just asked you, and I say, okay, there is a mandatory process. I can read the statute. It looks pretty clear it's mandatory, except this system for good cause can do anything they want to do. I would disagree with that characterization, Your Honor, and I would say that... Well, where does it say in that statute that they have anything more than good cause to deal with? Well, the statute itself doesn't use more than the term good cause. So then aren't we through? No, because good cause is in and of itself a limitation on discretion. It's widely recognized to have that meaning across multiple bodies of law. But moreover, we also have implementing regulations that provide the Board with additional guidance as to what... What factors do we have that this agency must use in determining good cause? Well, under Section 2535 of the California Code of Regulations... Is that a mandatory set, or is that what they may use? I believe the language of the regulation is factors tending to indicate good cause. Indicating. That's it. It doesn't say anything else. It doesn't say you're bound by these. It just talks about factors indicating it. Well, I have a couple of responses to that, Your Honor. First of all, if one compares the criteria present under Section 2535 to those that the decision makers in McQuillian v. Duncan and Board of Pardons v. Allen were given, these criteria guide discretion at least as much as those criteria. In Allen, for example, the Board was directed to release an inmate unless it was of the opinion that the release might be a detriment to either the prisoner or the community. That's a hugely discretionary form of guidance, and that still was sufficient to create a liberty interest. And the Allen court went out of its way to say that the presence of significant discretion delegated to the decision maker does not defeat the existence of a liberty interest. So long as there is some criteria there to guide the decision maker, then a liberty interest is created, so long as that is in combination with mandatory language. I would also add, Your Honor, that if you look to pages 30 and 32 of the excerpt of record, those pages contain the forms that the Board is required to use in making its discharge decisions. And those forms provide a specific area for the Board to note their reasons, and those reasons are done on the form by guidance to the regulatory criteria. So there is reason to believe that... But there's nothing in the statute that suggests they have to use that criteria at all. The statute itself does not refer to the criteria. The statute is, in fact, the law. The forms are not the law. The forms are not the law. I would agree, certainly. But the statute itself on its face contains the phrase good cause. And in light of this Court's opinions interpreting the phrase good cause and the Supreme Court's opinions interpreting the phrase good cause... What's your best case that good cause is somehow a limitation? Because there are cases that suggest it isn't a limitation. You'd agree? I'm not sure I would agree that there are cases that hold that the phrase good cause is consistent with having no limitation on discretion. I'm going to ask my briefer to give me my best case. Your mad briefer? Yes. Okay. But I would say that, you know, if you look to this... I mean, I have right here in my notes good cause might be enough. Oviatt, that's a Ninth Circuit decision. That might be enough. But Bowles v. Tennant doesn't seem to help you. Well, Your Honor, I would say if you look to this Court's cases that consider when a person has a protected interest in continued employment, every single one of those cases has found that when a person may be discharged only for a cause, that is in and of itself sufficient to create a liberty interest. And so good cause generally does mean that the discretion of the decision-maker is not entirely unlimited. But here we don't have to rely on just good cause because we also have the regulations and we have the mandatory limitations. Well, but the regulations, as you've already said, are not mandatory at all. They're just there to say some things are good and some things you could rely on pretty good. But it doesn't say those are the only. You agree. But that is more than what was present in either McClellan or Allen, both of which found a liberty interest. I'd like to reserve the remainder of my time for rebuttal, please. Okay. Good morning, Your Honors. My name is Vicki Whitney. I'm in the Attorney General's Office representing NAAP-LE, Parole Agent Carla Erkenbrecher. I feel a little at a disadvantage because I don't have a mad briefer with me today. And the earlier one left, so I can't borrow her. All right. Your Honors, in 2009, this Court affirmed summary judgment for three prior defendants, and it remanded as to Erkenbrecher only. To discover the issue of whether Erkenbrecher was personally involved in failing to give O'Keefe the notice of his retention on parole. In the further development of the record in the district court, the answer to that question is no. She was not responsible to convey a formal notice to O'Keefe that he alleges. Regardless of that, whether you assume that a formal notice was given by the parole officers in Nevada where Mr. O'Keefe was on parole or not, Mr. O'Keefe was actually aware of his retention on parole and his right to appeal. Consequently, he can't rely on his decisions to simply discard the procedural avenue that was made available to him and now try to demonstrate the meaninglessness of that procedure as a due process violation. Moreover, there is no substantive due process right created by California's claim in this case. O'Keefe does not have a federally protected liberty interest in the right to administratively appeal the Board of Parole's hearing. And even the statute itself, further going to the issue of whether Erkenbrecher had some duty or was liable for a failure to give a written notice, Penal Code Section 3001A does not place that burden or that obligation on her. It places it on the department or the Board of Parole hearings. So regardless of how you look at this case, the foundation and the crux of it is that Defendant Erkenbrecher had no responsibility to convey any notice whatsoever, and she could not possibly have violated any due process right of Mr. O'Keefe. And the evidence of that is not clear. Kagan. Kagan.                            That is one part of it, Your Honor. Okay. The actual notice is based on his conduct in Nevada where he was serving parole under the Interstate Parole Compact. For example, on February 5, 2002, found in the record at excerpts page 34, it shows that on February 5, 2002, right at the time of his first parole discharge decision, the review, Mr. O'Keefe actually provided his Nevada parole agent with a copy of Title 15's regulations concerning the 13-month review. So that's a very important fact to establish his actual knowledge. Moreover, after he was retained on parole, which is reflected, again, in the record, pages 34 and 48 of the record, when he was retained on parole, the Nevada database reflecting that notification from California, Mr. O'Keefe continued to report to his Nevada parole agent, including in March of 2002, after the February 11, 2002, retention decision, to ask if he could have permission to travel to Hawaii. He was also in June 2002 going to send California an appeal form due to what he thought was the State's lack of filing of an annual progress report. He continued to pay his parole fees to Nevada all throughout 2002. And then his parole review decision in 2003. On March 3, 2003, again, the board transmitted to the Nevada parole office the retention on parole. That is reflected in the record at page 31. On the same day that he was retained in a visit with his parole agent, he presented the state with a prescription for codeine and other drugs. And he advised that he was putting together a business plan to start his own business. That is in the record at page 44. He continued repeatedly to report to his parole agent, knowing full well that at both the time he was released on parole, he was given a copy of Title 15 regulations, and then when he provided that on 13-month retention review to his parole agent in Nevada in He continued to see his parole agent all throughout the entire period. So, yes, he had actual notice of his retention. It strikes me that the strongest evidence is the information given to him at release. I mean, the other examples that you've given about continuing to report back to me could be explained by him thinking that they've made a mistake and they haven't done what they're supposed to do for the release. And he doesn't want to get into trouble, obviously. He wants to continue to comply until the end, either because computers need to catch up to him or, you know what I'm saying. Yes. Because these processes are often very slow. So I worry a little bit about the fact that he's being penalized for the notion that he's checking in as he's supposed to check in. But to me, it seems quite significant that he's given a copy at release. Yes. He has given that. He understood his right to appeal, giving that again to the parole agent in Nevada. And, indeed, continuing to report on parole is a very significant factor. But the more important thing is he had issues with his reporting on parole in Nevada. And the record reflects that he was advised, you've got to keep reporting. You've got to keep reporting. If you don't, we're going to change you to weekly supervision visits with us. He never once, and is reflected in the Nevada parole record, he never once asked his Nevada parole agent on any of his visits what's going on with the retention decision. He knew that he had a 13-month review. That's obvious. We know there's no record of him asking. Is that what you mean? That's correct. Okay. That's correct. All right. And the absence of that record, given everything else that's included in it, would have been there for advising him. So, as to the actual notice of retention, again, formal notice isn't necessary for due process purposes when you have actual notice. And regardless of that, and very importantly, is the fact that when it was raised through his administrative parole in his revocation decision when he was returned to California, he was specifically advised that, okay, we'll go ahead and give you this. You'll have the right to appeal. That's the process to which he was entitled. And that's the process he was given, although he declined to take it. What is your response to opposing counsel's position that he only got that right after he'd been in jail for 10 months? Well, our response to that question is actually answered in the case of people v. Jack, and also in California cases that specifically address this statutory scheme. N. Ray Jack, N. Ray Carr, and N. Ray Rusica. Those cases all talk about the fact that that is the remedy no matter when it comes. It doesn't matter if you've been in jail. It doesn't take away from the fact that the Board, and in particular in people v. Jack, it said that the appropriate remedy was to order the Department to transmit a copy of the decision and allow for the appeal. And against an argument made similar to what is being made by O'Keefe here about the delay in it, the Court there said that there is no reason to assume that the Board of Parole Hearings will not properly perform its duty to afford a fair hearing. So that question has been answered in the California cases that have dealt specifically with this statute. And as the scorecard ---- Have any of them involved a 10-month delay? I mean, at some point it starts to look like a pretty illusory remedy and a pretty illusory process. And so that's why I asked the question. I don't know that there's any ---- that 10-month delay that comes to my mind. But I do know that in N. Ray Rusica, it was after the revocation and after the individual had been back in prison. So it was the same, almost identical to the situation here. And in N. Ray Rusica, the California appellate court said that that is enough, that's what we're given, that's the process. And as long as that procedural avenue is afforded, because to go further would to put the Federal courts in the position of having to look at all of these individual procedural rights to ascertain whether the process is being met under these State schemes. And respectfully, the Court in Swarthout indicates that that has never been the law. To the contrary, we have long recognized that if there is a mere error of State law, it is not a denial of due process and it's left to the province of the California courts to resolve. And I would also point to the fact that Mr. O'Keefe did file a petition for habeas, but he abandoned it. He didn't follow through on it. So there were plenty of avenues to have dealt with this at any time. So if we were to adopt your argument, would we be avoiding determining whether there was, in fact, a liberty interest in this particular situation? Yes, Your Honor. Effectively, I would suggest to the Court that this case can be decided on the record that shows that Erkenbrecher had no individual liability, duty, obligation to convey the formal notice to Mr. O'Keefe in Nevada. And the record evidence, again, is found in the record at Excerpts of Record pages 6 through 7. I would point to the fact that I'm going to go back to Mr. O'Keefe. But what you're really saying, we could adopt this rationale, as I understand it, without ever attempting to determine whether California had the liberty interest that the appellant would suggest. Yes, Your Honor. All right. But then after that, if we didn't adopt that one, and we at the same time found that the remedy that California State courts have allowed is the appropriate remedy, we would never get to that unless we did find that there was a liberty interest. That's correct, Your Honor. Yes. So this Court, and I would, I guess, just rely on the doctrine of constitutional avoidance here, but effectively, the issue sent down by this Court to the district court can be answered without having to go into the existence of a liberty interest here, because the evidence is replete that the Nevada parole agent was the one to convey the notice, not Agent Urkenbrecher here in California. So there's no basis for her individual liability in this case. And the case can go away. If, however, the Court wants to move to the issue of due process, the only interest of due process here is in a procedure. The only liberty interest is a procedure. It is not substantive. And the courts have been clear, especially in California, about the notion that you don't just automatically get off of parole when or release from parole if the Board of Parole Hearings has timely and appropriately retained you on parole, which the record here shows happened. That's not your remedy. Your remedy, if you don't get a formal notice, is that you get the notice and your right to appeal that substantive decision is preserved. For Mr. O'Keefe to go forward in this case, in any event, he can't prove the damages because he cannot show that the ultimate decision of the Board of Parole Hearings in retaining him on parole was not proper. And because he chose never to appeal that decision. So, yes, Your Honors, that's the position that we would express, is that on the issue this Court sent down in 2009, it's answered, she was not liable, she had no duty to directly convey that formal notice. And it's not necessary, then, to go into the due process issues. But even if you do, the result is no different and the district court's judgment should be affirmed. And I would just say briefly, on the issues that the district court did not decide, indeed, this Court can rightfully decide those issues regardless. It's pretty clear under video software dealers that regardless of the basis, this Court undertakes a de novo review, as same as the district court did, and the record is replete with the information necessary to decide it. Moreover, in this Court's case, in Castro v. Terhune, where the record is developed such as this, the Court said that it would be pointless for this Court to vacate and remand for such a determination. Thank you, Your Honors. Thank you. I'm glad you've saved enough time here, because it seems to me that our conversation was a little bit off-kelter as to where the warden wants to go. So maybe you better start to determine what we should do in that particular instance. What about the factual record here? Yes, Your Honor. I would first submit that the factual record below is not complete. At docket item number 93, the district court asked for briefing on five issues it was going to consider for summary judgment, and the issue of actual notice is not one of them. It would be unfair for this Court to decide on the record below without Mr. O'Keefe having any notice that that issue was even up for consideration before the district court. I would also add that if you look at docket item number 97, Mr. O'Keefe does contend repeatedly that he took steps with his Nevada parole officer to attempt to ascertain whether he had been retained by the California Board or not. Because this motion was decided before this case is being appealed from a motion for summary judgment, this Court has to resolve all of those inferences against the State. And this Court, if it does resolve those inferences against the State, cannot find actual notice of the retention decision. I would also add that I do not think that Mr. O'Keefe had any notice of the retention decision. Is there enough in this record to know what it is your client would argue as to those motions? On this record, no, because that issue is not fully briefed below. Well, it seems to me then your argument is send it back and have those motions determined rather than you can't make the decision. All we can say, I guess, your argument is send it back because we have some more evidence to give as to those. Well, once a liberty interest is recognized, which is the basis of liberty interest. Well, they're not arguing about liberty interest here. They're arguing constitutional avoidance. They're arguing avoidance, that you had all the notice you needed. It was all there. It wasn't this particular defendant who was the problem at all. It was Nevada. Well, Your Honor, I suppose this court could simply remand the case for further fact-finding as to the issue of notice. That is something the court could do. However, since the district court did resolve the issue of whether there's a liberty interest, and since that issue has been fully briefed, I think it would make more sense for the court to consider whether Section 3001 creates liberty interest before remanding. I don't know about the sense, but I got this idea that when I got here, they said I don't consider a constitutional issue if there's another issue which will end the case without going to the Constitution. It seems to me that's exactly what the State has suggested to me. But, Your Honor, doing that would require not drawing inferences in favor of the non-moving party, and that is not proper on a motion for summary judgment. Well, I understand your argument, I guess. I want to make sure I'm clear, because if you're saying there aren't enough facts in the record to determine it, that's one thing. If you say the facts are there, I can list out the facts and draw all the inferences in your favor and come down against you. What are you saying? To be clear, Your Honor, I'm saying there are not enough facts in the record, and for that reason, you cannot reach the issue. However, I would, in the interest of judicial economy, I guess, I would suggest that if the record were more fully developed, there's no reason to believe that this issue would be resolved in the State's favor. And so then we'll be back on appeal again, considering the liberty interest issue. All right. Thank you. I appreciate your argument. Case 11-17558 is submitted.
judges: Piersol, SMITH, CHRISTEN